Ingram v. Kubik Everyone ready? Yeah, good morning Mr. Sherrod. Yeah, I feel poorly prepared. I don't have any Judge Wisdom quotes for you. You noticed that as well as me. I represent Kirby Ingram. Plaintiff's claims, Mr. Ingram's claims in the first amended complaint fall into two categories. Basically, three categories. You've got claims against an individual deputy, a supervisory claim against the sheriff, and the ADA Title II claim. From plaintiff's perspective, the complaint against the individual officer was pretty straightforward. Federal Civil Procedure 882 only requires a short and plain statement showing that plaintiff is entitled to relief. He alleged that he was no threat, committed no crime, in fact was a man who needed help, was following the officer's command, yet he was picked up and slammed head first to the ground resulting in a serious neck injury. Mr. Sherrod, let me tell you what I think about aspects of this case so that you can help me with the other parts. It seems to me that with regards to qualified immunity in 1983, that you alleged enough, and again this is only my perspective, the three of us haven't spoken about this case, that you alleged enough to get past qualified immunity at the motion to dismiss stage with regards to the excessive force claim. I think you've done enough there because even if there was justification for a seizure of some kind when he went back to talk to the medical personnel, at least without more facts, there isn't justification for the type of force that was used. But I want you to help me with the other claims, for example, and one of them being the ADA disability discrimination claim. Tell me why you think you've pled enough to get to discovery and summary judgment on that claim. By the way, that's exactly where I am with this case. I am as well, for what it matters. I sort of figured that's where we might be. This is not a straightforward issue. There's been a recent Sixth Circuit decision that I picked up getting ready for oral argument in Jones v. City of Detroit that had a sudden opinion, finding the reference in Title II to Title VI to be essentially dispositive and a dissent by Judge Moore that lays out plaintiff's argument pretty well. It comes down to how much weight can this, in a statutory construction manner, can this reference to Title VI bear? Judge Moore persuasively, in my mind, makes the point that it is not correct to treat the reference to the remedies, procedures and rights in Title VI as negating, as being a clear indication by Congress that the background principle that we work from in tort law with the exception maybe of 1983, but that's all, is that we have vicarious liability. Because if the entity does not have an incentive to make sure its employees, in this case, police officers, but it's going to obviously this has a far reaching impact. We said that repeatedly that the same standards govern claims under both 6 and 9. I guess my reading of the cases is that vicarious liability has been, you know, is an open question. Yeah, but my point is that we've said repeatedly that the same standards apply to both. The same discrimination standard, that would be correct. Except that, you know, when you're obviously talking about potential distinguishing factors, you know, I guess we haven't, the court hasn't grappled with Section 504 for certain. But, you know, obviously you got spending clause legislation with Section 504 whereas Title II invokes the full power of congressional authority as part of a broad statutory scheme. And it, as Amici have said it more persuasively than me, if there is no vicarious liability, and this circuit joins the Sixth Circuit on that Title II point, then, you know, this has a real impact for people with disabilities. Well, to get past, to even get to the vicarious liability point, you have to sufficiently allege that there was ADA disability discrimination, right, on the ground. Because if there's no violation, then there's no supervisory liability. So help me with, if you could, why you think you've pled enough on disability discrimination by the officers or deputies on the ground at the time of the incident. You know, the reality is, as pled, taking the inferences in Mr. Ingram's favor, this was a man who needed help. And, you know, at most, if you're going to seize him, you have to do so in a way that minimizes consequences to him. I do not believe that I actually said the magic words failure to accommodate in the pleading. I actually also alleged that it was a discriminatory act motivated by hostility towards him because of his behavior. Now, police officers, and I'm moving to the theoretical now, but police officers have to deal with individuals sometimes who are not well and are acting in ways that are strange or bizarre or unpredictable. And so how do we distinguish any action taken against someone who is not acting normally, let's say, and distinguish that from an ADA disability discrimination claim? Like where, if we have to write an opinion in this case, and we're going to have to, what's your guidance as to how we distinguish a garden variety encounter with someone who is not appearing to be well, and distinguish that from a case of disability discrimination? Well, first of all, this is on a motion to dismiss. I know, I know. That's why I told you I was operating at a theoretical. So, you know, but if somebody presents that they are threatening their life and are suicidal, you know, there may be other issues that have to be sorted out. But I don't think that the, you know, the disability issue should be hard because he is, you know, obviously, from appearing to the officers, you know, substantially limited in a serious way, you know, or at least that they perceive him as such if they're going to take him and seize him. What is the discrimination consist of the seizure or the method of the seizure. In this case, it would be a failure to accommodate by not trying to manage a man who was not a criminal, who was not a threat, and to go to violence, that would be a failure to it doesn't sound like the problem is the seizure it's the method of the seizure. To answer Judge Jordan's question that's that that seems to be what you're saying but what are we clear about under the facts of the complaint, you know, I guess, theoretically, a mental health seizure could be justified, but this court's decisions. Yeah, I mean it looks like that from the facts that he might have been a danger to himself. The plaintiff didn't allege that they tried to execute a mental health seizure. Plaintiff alleges that in response, not to seize him right not to take him to the hospital. He got mad and pick Mr. Ingram up and slammed into the ground. Head first and the facts could prove otherwise but as plain. How is that motivated by disability. I mean, you know, how do you prove anything is motivated by such a thing. You know, I guess we're telling us you've got an alleged facts that get make that a plausible, plausible, you know, inference. Well, the plausible inference comes from the fact that this is a man who needs help and he's assaulted. So that, you know, if you're arrested because you are a diabetic and you're exhibiting the signs and symptoms of diabetes as potentially, you know, anytime, anytime, a disabled plaintiff is assaulted were to infer discrimination on the basis of this disability. I would say that is in terms of my burden on proving the case of trial or summary judgment that probably isn't enough, but on the motion to dismiss what else can a plaintiff, you know, alleged you can't, you know, Okay. You've saved five minutes, Mr Sharon let's let's hear from Mr. So the. Yeah, please are divided. Mr Canada. Good morning, please the court. I am David cannot I represent the current and former sheriffs of Madison County and of course I'm here to request that the court affirm the district court decision which dismiss the claims against Dorning and Turner, both of whom are my clients. And I have a problem with me on the excessive force claim. Your Honor, if I could address that, again, Sheriff Sheriff Dorning wasn't there on the scene Sheriff Dorning didn't exercise any force so this is solely a claim of supervisory liability. And what I would point to is the courts decisions in Brooks versus shot, which is a 1987 decision to this court and in Simmons versus Bradshaw, which was a 2018 decision. Both of those decisions are actually cited in a rule 28 J letter yesterday, but both of those decisions make clear that the complaint in this case is insufficient for a supervisory liability claim. In Brooks, we had a situation where there were 10 prior incidents and the court held that that was insufficient. The primary big reason being that there was no indication that the prior complaints were meritorious. Now we'll go into the fact that that is exactly the same as the situation here, where all we have is lawsuits, which are mere allegations all filed by appellants council over the course of more than nine years. Was there indication that those lawsuits had settled. That's the allegation and this court in Simmons repeat strongly rejected the idea that even 16 prior settlements could indicate anything. And of course there's strong public policy reasons for that the sheriff isn't in charge of whether the case settled his insurance carrier is. And so, to hold it against him and to say that that the fact that his carrier settled cases is and to somehow imply that that means that he knows that his practices are somehow unlawful is a bridge too far and the court directly. Is that he did, he did not, he took no action. In response to any of the beatings that his deputies administer. The allegations for one thing are insufficient for reasons I'll explain but also I would request that the court take a look at Simmons because the court in Simmons held that allegations of routine and uncritical ratification of deputies prior uses of force are not sufficient because that was wasn't that a summary judgment case where there was a lot more evidence that was before the court to dispel that inference. It was a summary judgment case but I don't think there was any more evidence in front of the court and that's sort of the situation is that plaintiff's counsel is the one who filed all of these cases plaintiff's counsel is literally an expert on sheriff Dornan. He hasn't alleged anything else he could have alleged facts about these prior settlements or these prior cases, there's nothing in the law about his allegations about the Bryant case where he said that by all accounts that should have led to some type of investigation and some type of conduct but it did not well plaintiff actually had in the other ones doesn't it doesn't it start to build some idea that this sheriff was not interested in investigating or turning a blind eye to claims of excessive force plans plaintiff's counsel actually alleges that there was an investigation because the complainant paragraph 58 reveals that the sheriff allowed the federal government to handle that internal investigation of one of the own deputies which was appropriate, and the appellant notes in his brief that the deputy went to the federal prison. So there was not the others who were involved in the conduct. Well there's no well there's no allegations to say that those others really did anything wrong. There's nothing more than conclusions. That just leaves when we, when we take away the revenge beat down as is called, which resulted in a deputy going to prison it just leaves lawsuits which are nothing more than than accusations and so what about the fact that there was never. He has alleged that there was never an investigation and that there was a policy of not investigating and he has taken that beyond conclusively by tying to the fact that he's asked for documents where there should have been an investigation he was told there were none and he was given other basis for that allegation, I would say to two answers to that for one thing the allegations are plausible and we know that Judge Jordan may not remember this but he said on a panel a few years ago in which a you present at summary judgment to maybe make this case more like the Simmons case, or I think the other case you cited was a trial case but but again, the fact that you're going outside of the pleadings and challenging his pleadings makes me think that you need to do something to rebut what is otherwise well played. The last thing I would say is that, and I do need to address the ADA claim but is that this court in Brooks versus shy of address the same allegations about different procedures it held that different procedures for processing citizen complaints resulting in greater discipline that there was that that's not necessarily a basis for a claim, and it found nothing objectionable about a written policy containing specific complaint procedures and so I would ask the court take a look at Brooks before deciding this because I did, and it indicates a lot of the ways in which evidence that was deduced was used to counteract, some of the allegations and prevent there from being an issue of fact I mean they're taught he talks about the area in which shy patrolled and how that might lead to certain things and there was action that was taken in certain incidents. But again, we don't have it here we have to accept what the plaintiff has alleged unless it is conclusory. All I would say to add to that, Your Honor is just to remember that the, you know, Sheriff Dorning has made a request for qualified immunity in this case and so it's our position that at the very least Brooks and the other cases supports that I do think it's important that I request the address the ADA claim. My colleagues central. You think Judge Sutton's right. Chief Judge Sutton's right. Well, not only that, I think the 11th Circuit is right. On at least three different occasions in a state of Osorio in McCollum versus Orlando regional health care, and in Silverman versus Miami Dade transport the court has already answered these questions. And I guess beyond that answer the vicarious liability question for this claim. I think that it is answered by liaise quite directly, which is that I heard Judge Jordan I think earlier say if you're in for a penny you're in for a pound when you're borrowing from statutes and if we are borrowing from the implied right of action under title six, you don't get to shave off the vicarious liability prohibition. And really, the appellant central contention is that a law, this law would work better if the court would authorize enforcement via vicarious liability, but that's not how statutory construction works as Brian Garner writes in reading law purpose can't be used to contradict the statutory text and Congress here was very specific about the enforcement mechanism it chose it specifically referred to section 794 a, which is the Rehabilitation Act. And not only that, the Supreme Court has held in Canada versus University of Chicago that Congress is thoroughly familiar with these unusually important precedents and so Congress knew what it was doing. In fact, it shows a different tack under title one when it incorporated a different scheme. Might keep in mind. Mr Garner had a co author is worth mentioning. He did indeed and I hate that my time precluded Justice Scalia for being listed there. Mr Owens. Will you speak speak with us please. Mr Owens you are muted. I'm sorry judge. Good morning at all. My name has been always my pleasure and I appreciate the opportunity to represent deputy Lewis cubic, who is a former deputy with Madison County. He has been individually charged in two counts, one for an illegal seizure under the Fourth Amendment, and second for excessive force in carrying out that seizure. In light of the preliminary comments but I think, given the factual allegations of the mental health status of the plaintiff, your client may very well be entitled to qualified immunity for the seizure, but, but the excessive force claim to me is a problem for you. Yes, sir. And also I understand it's a problem for Jordan as well. And certainly to. I don't see how this is not a docile suspect case I think the 11th Circuit has said it a number of times that you're not entitled to qualified immunity. When someone has essentially given up and stopped resisting. Only excessive force aspect of the case I certainly understand that it is preliminary it's premature for me to argue that there is a video of the events that differ substantially from what is alleged. Yes, that would be premature you are right. And my colleague is very adept at pleading around qualified immunity for purposes of motion dismissed. I understand that. I would like to argue that I believe the count dealing with seizure itself is due to be dismissed on the basis and just prior you were actually involved in one of the three cases that I'm familiar with that dealt with the question of whether a seizure has occurred and whether it's justified and that's the Ellison and Hobbs case. The 2019 case we did neither party cited that case. I think that is dispositive of the issue of the seizure itself and whether the seizure was justified as well as the two cases that deputy Kovac cited in our brain. The May case and the Roberts case, both of which dealt with the issue of whether there was arguable probable cause to make to affect the seizure. And in this case, we believe that there was arguable probable calls and that the seizure was justified on the basis that, first of all, the deputies were there because of a 911 call from the girlfriend. Who was not protesting our being there. In fact, she had asked that that her boyfriend, Mr. Ingram be taken to the hospital. And additionally, while there, they had to seize the knife. He had attempted suicide. They had to seize the knife or for which the suicide attempt had been made and the weapon that was used. And on top of that, they had not had an opportunity to frisk him to see if perhaps he remained a danger to himself or to others and had other weapons. And then, as bizarre as it sounds, in order to avoid the dealing with officers, he fled the scene for a cotton field. And I think those circumstances certainly fall within the confines of the Ellison case, as well as the May and Roberts case in terms of whether the seizure was justified under the circumstances on the basis of arguable probable cause. So we do believe that the count dealing with the seizure against Deputy Kubik is due to be that that that portion of the case dismissing that is due to be affirmed. The other the other concern I have, and this is not attributable to you because you weren't responsible for it in any way whatsoever, is that the district court really didn't address the type of force used. The district court said you could have seized him, given the circumstances and I accept that I accept that the police officers were dealing with a pretty volatile situation, they could have seized them in some way, shape or form, but the district court and again I'm not laying this at your doorstep, but the district court didn't address the type of force that was used and that that again is a concern for me. Yes, Judge, you don't understand that and that I think that blends over into the excessive force aspect of it. I would caution against because my colleague suggests that this is an obvious clarity case. The only obvious clarity case, as the court knows, seldom is that used as a basis to deny qualified immunity generally is the clearly established standard that is used, and I would suggest that this should not be an obvious clarity case, particularly at the motion this stage, because the fact is clarity is an example of being something being a violation being clearly established. But, but it seemed to me that slamming an individual who is not resisting compliant docile to the ground headfirst in a way that causes a serious neck injury. That sounds obvious and clear to me. My point is, I don't believe the court needs to go there at the motion to dismiss stage but like I said there is a video that shows a different scenario and so Mr Owens you know we can't consider the video right now. Absolutely. I don't believe, though, that the court needs to at the motion dismissed days needs to delineate whether this is a clear that whether the clearly established standard should be used as opposed to the obvious clarity standard which they blend into each other I don't think that's necessary. If the court is going to reverse and remain with respect to the excessive force claim that that was the point I was attempting to make out of that. And I appreciate the court's attention and time and attention to this case and perhaps we'll be back here at the summary judgment stage. Are there any other questions for me. Thank you. Okay, Mr Sherrod you've saved five minutes. Probably won't need all of it. I would like to just talk to the court briefly about this unreasonable Caesar seizure issue, because it is is framed on a motion to dismiss and a man in a mental health crisis is not the same as a man who's been investigated for a crime. This court's decisions and may and Rob, the city of the hunter and robbery spam and I think those are the main cases in this area, I think, when this court writes this opinion, it's going to have to write some thoughtful things about the title to have the this distinction, because the district court got all your caught up in seizure but you know this is not a man who was subject to to arrest the cases that were involved. Roberts, the officer went briefly into the house, got the person out made sure they weren't suicidal. You know, and then that person, you made a an unlawful seizure claim in in May, a woman was taken with family support for for a mental evaluation. Nobody was seized by violence, which raises an incredible. Let's take the violence out of it for a moment, Mr. Sure, because that goes to me, from my perspective, to the excessive force claim where I think you've alleged enough. I think you've alleged a violation that would be that's clearly established. Okay. That's separate, though, from the idea that the officer couldn't see your client, but the for big based on the substantial possibility that he was a threat to himself. I guess I'm asking this court to consider when it talks about these issues in its opinion to consider about the idea of less intrusive means which was specifically discussed in this context, I believe in the in the May case that it said that allowed the claim to go forward for an unreasonable seizure, because they also had forced her to change clothes and disrobe in front of. So, that don't really allege that here you first count you simply allege a seizure without probable cause or a reasonable suspicion, you don't allege along the lines of may that there was something extraordinary in the manner that also made it an illegal seizure. Well, you know, I may have been artfully phrase the count, but why do you need to do that. I don't understand why you need to try to jam in your excessive force claim and count to that I think everybody here says we think goes forward into count one, am I missing something about why make me just want us to create better law for the future. No, I guess I'm concerned that, you know, because of the particular allegations here, we don't acknowledge that you have the seizure part has to be done reasonably, it isn't just a traditional excessive excessive force is is a seizure claim to right. All their Fourth Amendment claims that you know they're all right, they're all granted in the Fourth Amendment. Well, while you're right, while you're right maybe he's got something in his head that isn't for for y'all's consideration when I hear let me, let me again. You're right that we have to be careful in writing this the way we're careful in writing everything else. But you said with regards to the ADA claim earlier that some form of reasonable accommodation might be might have been some mental health intervention. How do you achieve a mental health intervention in this scenario where he is running away from the deputies into a field has tried to hurt himself before, without physically grabbing a hold of him. If he's repeatedly said if if you want to take me into custody. But then you'd say, then you'd say that there was an illegal arrest. Actually, I don't know that I would. But you know I mean, the answer so the answer was to put them in handcuffs and put them in the back of a car and take them away to a hospital. If it was their decision that that's what they were doing, as opposed to getting mad and assault. Yeah, yeah, this is this could be multiple things, but if this is treated as a justifiable seizure. It is has to be done in the least intrusive a less intrusive means, if possible, because I would say, because this is a man with a mental health disorder and for trying to help him. We don't want to hurt him on the way to get him treated. Any other questions. No, thank you. No, thank you. Okay, Mr. Sherrod I think we've got your case, I think we understand that. Is there any last thing you want to say for 20 seconds. There is not. Thank you, Your Honor. You're sure welcome.